436 A.2d 1172

**John B. BIGLEY, Appellant,**

**v.**

**UNITY AUTO PARTS, INC. and The Workmen's Compensation Appeal Board.**

Supreme Court of Pennsylvania.

Argued March 5, 1981.

Decided Nov. 5, 1981.

Raymond G. Hasley, Rose, Schmidt, Dixon, Hasley, Whyte & Hardesty, Karl Alexander, Pittsburgh, for appellant.

Joseph F. Grochmal, Noble R. Zuschlag, Fried, Kane, Walters & Zuschlag, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

Appellant John Bigley was an employee of Unity Auto Parts, Inc. On September 7, 1973, Bigley was a passenger in a vehicle belonging to Unity and operated by a co-worker when it became involved in an accident. As a result of the injuries sustained, Bigley is now a quadriplegic. At the time of the accident Bigley was 21 years of age and had just graduated from Penn State University. He was married and the couple had one child. Following the accident, American Hardware Mutual Insurance Company, the workmen's compensation carrier for Unity, filed an official form of notice to the Commonwealth reporting the injury and indicating that compensation would be paid to Bigley at the rate of $62.67 weekly. The payments were not accepted by Mr. Bigley. Instead, Bigley and his wife instituted a trespass action in the Court of Common Pleas of Westmoreland County.[1] They named as defendants Unity as well as Jean-

---

1. Mr. and Mrs. Bigley were divorced prior to the settlement of the trespass action.

nette Auto Parts, Inc.,[2] Isadore Friedman[3] and Albert R. Larrabee.[4] Unity's liability insurance company was different from their workmen's compensation insurer.

On September 5, 1975, Bigley also filed a workmen's compensation claim petition alleging a work related injury on September 7, 1973.[5] That petition included a notice which stated: "This action is filed to protect my rights under the Workmen's Compensation Act within the statutory period allowed for filing claims."

In the suit in the trespass action, on August 7, 1975, the judge ruled that the injury did not occur while in the regular course of employment[6] and that the defense of workmen's compensation was not available to Unity.[7] Subsequently on March 5, 1976, the remaining parties (Bigley, Unity and Larrabee) entered into a settlement. By the terms of the settlement agreement, Bigley agreed to prosecute the claim for workmen's compensation and to use his best efforts in successfully concluding the matter. It was also agreed that the insurance companies of the defendants in the trespass action could be subrogated out of the award Bigley might receive under the Workmen's Compensation Act. § 319, 77 P.S. § 671.

2.  This corporation provided Unity with various accounting and bookkeeping services.

3.  Isadore Friedman was the title owner of the vehicle used at Unity. Mr. Friedman owned stock in Unity and Jeannette Auto Parts, Inc. He was the president of both corporations.

4.  Albert R. Larrabee was an employee of Unity and was the operator of the vehicle at the time of the accident.

5.  Act of June 2, 1915, P.L. 736, Art. 1, § 101 *et seq., as amended,* 77 P.S. § 1 *et seq.*

6.  The accident occurred while Bigley was enroute home after leaving work for the day. The court concluded that Bigley's contract of employment with Unity did not provide for his transportation home from work.

7.  In the order of August 7, 1975 the motions for summary judgments filed on behalf of Jeannette Auto Parts, Inc. and Isadore Friedman were granted and judgments were entered against Bigley and in favor of those two defendants.

On March 5, 1976, pursuant to an oral motion made by the defendants in the trespass action, the court issued a decree vacating the original order of August 7, 1975 relating to Bigley's status at the time of the accident and further decreed that the issue of whether the injury was suffered during the regular course of employment was to be preserved for disposition by the appropriate workmen's compensation authority.

For reasons not explained on this record, the claim petition was withdrawn at appellant's counsel's request. The request was made on February 25, 1977. On February 28, 1977 Referee Kenney approved the request and permitted the withdrawal.[8] No appeal was taken from that order. Subsequently, new counsel for Bigley filed on his behalf on October 3, 1977 a petition to reinstate his workmen's compensation claim. Unity filed an answer alleging (a) that the claim was barred by the statute of limitations; (b) that the original petition had been withdrawn and no appeal taken and was therefore *res judicata*; and (c) that the petition for reinstatement was untimely. The referee before whom the hearing on the petition for reinstatement was held dismissed the petition. This decision was upheld by the Workmen's Compensation Appeal Board and the Commonwealth Court, 49 Pa.Cmwlth. 448, 411 A.2d 575. This Court granted review.

The Commonwealth Court was of the view that the instant appeal was controlled by that court's decision in *Fox v. Workmen's Compensation Appeal Board*, 33 Pa.Cmwlth. 575, 382 A.2d 494 (1978). Mr. Fox filed a claim on July 19, 1971 seeking workmen's compensation benefits as a result of an injury allegedly suffered on October 29, 1970. On June 5, 1972 during the hearing before the referee, Mr. Fox agreed to withdraw his claim petition upon the promise of the employer to pay the medical bills incurred as a result of the

8. The referee's decision stated:
Hearing on the above was scheduled for May 17, 1976 ... but was continued at the request of counsel for claimant. On February 25, 1977, counsel for the claimant, ... requested the within claim petition be withdrawn.

injury. On that date an order was entered permitting the withdrawal. Later Mr. Fox obtained counsel and appealed to the Workmen's Compensation Appeal Board seeking a reversal of the Referee's order permitting the withdrawal of the claim petition. He argued that he acted without the advice of counsel and contended he was under medication at the time which vitiated his capacity to intelligently decide to withdraw the claim. The Board decided against Mr. Fox and no further appeal of that ruling was taken.

Prior to the Board's affirmance of the referee's order approving the withdrawal, Mr. Fox filed a petition for modification of award advancing the same argument that he urged before the Board. A second hearing before a referee was held and thereafter the referee dismissed the petition. The referee's dismissal was affirmed by the Board.

In *Fox* the Commonwealth Court upheld the Board and the referee by concluding that Section 315 of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended 77 P.S. § 602 barred the requested recovery.[9] The Commonwealth Court reasoned "[p]etition-

9. § 602. Claims for compensation; when barred; exception
  Text of section as amended by Act 263 of 1974
    In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof. In cases of death all claims for compensation shall be forever barred, unless within three years after the death, the parties shall have agreed upon the compensation under this article; or unless, within three years after the death, one of the parties shall have filed a petition as provided in article four hereof. Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition: Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations. However, in cases of injury resulting from ionizing radiation in which the nature of the injury or its relationship to the employment is not known to the employee, the time for filing a

er's modification petition was properly treated as a claim petition in light of the withdrawal of his original claim petition." *Id.,* 33 Pa.Cmwlth. at 577, 382 A.2d at 495.

The factual matrix of *Fox* is entirely different from that presented here. In *Fox* claimant's reasons for the request to vacate the order to withdraw received an administrative airing. Rather than seeking judicial review of that ruling, appellant sought to reinstate the administrative process through the guise of a "petition for modification." The Commonwealth Court in *Fox* properly perceived the "petition for modification" as an attempt to relitigate an abandoned claim. The abandonment of the claim did not stem from the original agreement to withdraw by the claimant but from his failure to properly pursue his contention that the agreement to withdraw was not intelligently made.

The justification of the Commonwealth Court's result in *Fox* is simply that the claimant, having abandoned his claim, would not be permitted to gain recovery in a fresh action which ignored the conclusive effect of the prior abandoned one. The Commonwealth Court's reliance in that case upon the bar of section 315 was merely the device used to reach a desired result. In our present consideration, we must not permit the rationale employed in *Fox* to obscure the real question that we must resolve.

The pivotal issue in this case is whether the withdrawal of the original claim petition precluded claimant from a further attempt to seek recovery under the Act. The reliance upon the decision in *Fox* and the forfeiture provision of section 315 merely obscures the question to be here decided. It is clear that the obvious purpose of section 315 is to dictate the time within which a formal claim for compensation must be

claim shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

As amended 1956, Feb. 28, P.L. (1955) 1120, § 1; 1972, Feb. 8, P.L. 25, No. 12, § 2; 1972, March 29, P.L. 159, No. 61, § 19, eff. May 1, 1972; 1972, Oct. 17, P.L. 930, No. 223, § 4, imd. effective; 1974, Dec. 5, P.L. 782, No. 263, § 13, effective in 60 days.

made. The suggestion implied by appellee's argument that section 315 may also insure the expeditious disposition of the claim petition is neither warranted by the wording of the section itself nor the general scheme of the act.[10]

If a second request for compensation had been timely made under section 315, the same issue would be presented. The rights of the parties to this lawsuit do not depend upon a fictional determination of whether the petition to reinstate should be considered a new claim which would be barred by the time constraints of section 315 or an attempt to revive the original action which would not face that impediment. To the contrary, the true question raised is whether the Act or some rule of policy precludes further consideration of the claim. The time in which the effort was commenced to revive the claim is only one possible factor to be considered in that judgment.

■ Where an agreement has been reached as to compensability and liability for a particular injury the Act has provided broad administrative discretion to modify, reinstate, suspend, or terminate to effectuate the purposes of the Act. *See Leaseway Systems, Inc. v. Workmen's Compensation Appeal Board*, 53 Pa.Cmwlth. 520, 418 A.2d 796 (1980); 77 P.S. §§ 732, 772. If the withdrawal had been requested and approved in accordance with such an agreement, the administrative authority to vacate that withdrawal and enter the appropriate order upon cause shown is beyond question. *DeMontis v. Workmen's Compensation Appeal Board*, 29 Pa.Cmwlth. 625, 372 A.2d 950, reargued and confirmed, 34 Pa.Cmwlth. 285, 383 A.2d 259 (1977). Similarly, where an award has been entered, a corresponding set of powers have been provided in the administrative

10. There is no basis for concluding that the legislature intended to regulate any more than the time in which the original claim must be made by the terms of section 315. First, the language of the section indicates that the significance of the time frame relates only to the initial filing of the claim. *See Lewis v. Carnegie-Illinois Steel Corp.*, 159 Pa.Super. 226, 48 A.2d 120 (1946); *Ratto v. Pennsylvania Coal Co.*, 102 Pa.Super. 242, 156 A. 749 (1931). Second, other sections of the Act specifically provide for the processing of the claim petition once it is filed. 77 P.S. §§ 773 and 821.

process to rectify any injustices, *see Richardson v. Walsh Construction Co.*, 334 F.2d 234 (C.A. 3 Cir. 1964); *Iacaponi v. New Amsterdam Cas. Co.*, 258 F.Supp. 880 (D.C.1966), *affirmed*, 3 Cir., 379 F.2d 311, *certiorari denied*, 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849 or to conform the order to meet changes in circumstances. *See Muenz v. Kelso Beach Imp. Association*, 181 Pa.Super. 105, 124 A.2d 153 (1956); *Workmen's Compensation Appeal Board v. Dill Construction Company*, 20 Pa.Cmwlth. 145, 341 A.2d 537 (1975); *Airco-Speer Electronics v. Workmen's Compensation Appeal Board*, 17 Pa.Cmwlth. 539, 333 A.2d 508 (1975). *See generally*: P.L.E. Workmen's Compensation, § 256, 53; 77 P.S. § 771 (compensation agreement or notice of compensation payable may be reviewed and modified or set aside, if it be proved that such agreement or notice of compensation payable was incorrect in any material respect); 77 P.S. § 772 (modification, reinstatement, suspension, or termination of a notice of compensation payable or an original or supplemental agreement, within a limited time on proof that the disability of the injured employee has increased, decreased, recurred, or has temporarily or finally ceased, or the status of any dependent has changed).

Thus, the area of contention focuses upon the situation where there has been no agreement and no determination as to compensability and liability prior to the request to withdraw the claim petition. The heart of appellee's argument is grounded upon the premise that the administrative authority prior to an agreement or an adjudication differs from that which follows either of those events. Appellee concedes that a petition to reinstate a claim is an appropriate administrative tool to reactivate a case where there has been an agreement or an adjudication of compensability and liability. It is argued that prior to the establishment of the underlying validity of the claim, a withdrawal of the claim may not be reopened absent a showing that it was not voluntarily, knowingly or intelligently withdrawn. The dichotomy which appellee seeks to draw, with the conditions offered, is not supported by the language of the Act.

The only conceivable justification for the dichotomy is the fact that the Act expressly discusses the administrative powers where there has been an agreement, *McGahen v. General Electric Co.*, 406 Pa. 57, 177 A.2d 85 (1962); *Enos v. Walter*, 194 Pa.Super. 53, 166 A.2d 78 (1961); *Glen Alden Corp. v. Tomchick*, 183 Pa.Super. 306, 130 A.2d 719 (1957); *Crucible Steel Co. of America v. Workmen's Compensation Appeal Board*, 9 Pa.Cmwlth. 269, 306 A.2d 395 (1973). However, if it is argued that there is no expressed authority for an administrative reinstatement of a claim in the absence of an award or an agreement, it can be countered that there is also no expressed authority for an administrative approval of a withdrawal of a claim prior to an agreement or an award. If the absence of an expressed conferral of authority in the first instance is indicative of the absence of that power, then we must be equally persuaded that the absence of the express power in the second instance must force the same conclusion. If the referee was without the power to enter an order approving the withdrawal of the claim petition, the unauthorized entry of such an order would have no legal efficacy and could not bring about the determination of the action that appellee seeks. It is obvious that the remedial purposes of the Act, *Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 348 A.2d 746 (1975); *Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A.2d 601 (1969); *Hartwell v. Allied Chemical Corp.*, 320 F.Supp. 75 (D.C.1970), are better served if a power is to be applied, to find a greater administrative flexibility prior to an adjudication or an agreement rather than after either event.

Moreover, the condition imposed by appellee upon the exercise of this implied right, even if accepted, would not justify a foreclosure of instant claimant's rights to recovery. There is nothing in this record to establish that the request to withdraw the claim petition was "voluntarily, knowingly and intelligently" made. The record establishes that it was gratuitous, apparently in violation of the settlement agreement (in the trespass action) that counsel had negotiated for his client, and silent as to whether claimant participated in

the decision or was even aware that the request was being made on his behalf.

■ Consistent with the cardinal principle of statutory construction that the legislature does not intend to achieve an absurd result, 1 Pa.C.S.A. § 1922(1); *Commonwealth v. Fisher*, 485 Pa. 8, 400 A.2d 1284 (1979); *Commonwealth v. Horton*, 465 Pa. 213, 348 A.2d 728 (1975); *Mayhugh v. Coon*, 460 Pa. 128, 331 A.2d 452 (1975), we are of the view that there is an implied authority at the administrative level to accept a unilateral request of withdrawal by the party presenting the claim prior to adjudication or agreement. We find that no purpose of the Act would be served by an iron-clad rule that the decision to file a claim must be irrevocable and can only be terminated by adjudication or agreement. Concomitant with the implied power to permit a withdrawal prior to adjudication or agreement is also the power to reinstate that claim in appropriate circumstances. An analysis of appellee's position reveals that there is no real quarrel with our judgment that there is an implied administrative power to accept a withdrawal at that stage and to reinstate the claim in appropriate circumstances. The area of question is when should the power to reinstate be exercised.

■ The stated remedial purposes of the Act, *Workmen's Compensation Appeal Board v. Hartlieb, supra,* makes it apparent that the implied administrative power to approve withdrawals and to reinstate the original claim was not intended to provide a gratuitous boon to the employer to the prejudice of the claimant. The power to adjust inequities prior to an administrative determination on the merits must necessarily be as broad as the powers that are available after such a determination. The power to reinstate a gratuitous unilateral withdrawal should be liberally exercised absent a significant showing of prejudice by the other parties involved.

■ The question has also been raised as to whether instant claimant's right to receive consideration of his peti-

tion to reinstate was foreclosed by a failure to appeal the order of withdrawal. This argument misperceives the nature of the administrative power to grant reinstatement of a withdrawn claim. Section 423 affords an opportunity to dissatisfied litigants in the administrative process to receive a judicial review of asserted errors in the administrative process. Here appellant is not charging that the approval resulted from an administrative error. Rather, what is sought is the exercise of the sound administrative discretion to reinstate the claim petition. The initiation of the consideration here sought could not be achieved through resort to section 423 and no adverse consequences may follow from the fact that relief was not pursued under that section.

Finally, we are called upon to determine whether the settlement in the trespass action precludes relief under the Act. Where the Act is applicable, it is clear that it must provide the exclusive remedy for the aggrieved party. *Greer v. U.S. Steel Corp.*, 237 Pa.Super. 597, 352 A.2d. 450 (1975), reversed on other grounds 475 Pa. 448, 380 A.2d 1221; *Steets v. Sovereign Construction Co.*, 413 Pa. 458, 198 A.2d 590 (1964). Where the applicability of the Act is in question, the party seeking relief may offer alternative claims. *Elkins v. Derby*, 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81 (1974); 101 C.J.S. Workmen's Compensation § 936. Here the settlement was obtained without a definitive determination as to the validity of appellant's claim for a work-related injury. Not only was the applicability of the Act one of the principal areas of dispute at the time of the settlement, but one of the terms of the settlement agreement was that appellant obligated himself to seek an adjudication of that very question. Thus it is apparent that the parties to the settlement agreement, Unity being one of those parties, did not contemplate that the agreement would foreclose further recovery under the Act. There can therefore be no basis for concluding that there was a contractual basis for foreclosing relief under the Act.[11]

11. The estoppel theories urged by appellees require an element of reasonable reliance. *Commercial Properties, Inc. v. City of Pitts-*

It is also asserted that permitting appellant to pursue his claims under the Act would unjustly enrich appellant. The Act has anticipated the possibility of "double" recovery and provided for subrogation to adjust the equities. *Madrin v. Wareham*, 344 F.Supp. 166 (D.C.1972); *Arendas v. Rich & Co.*, 220 F.Supp. 957 (D.C.1963); Section 319, 77 P.S. § 671. Moreover, the attempt by appellees to frame this dispute as one between insurance carriers attempting to mitigate their respective losses is disingenuous at best. While it is true that if appellant is successful in seeking recovery under the Act the carriers for employer may recoup some of its losses according to the terms of the agreement entered into with Unity and Larrabee, appellant will be provided with substantial life-long medical benefits which are not subject to subrogation, and which are vitally necessary in view of his present state.[12]

Accordingly, the Order of the Commonwealth Court is reversed and the cause is remanded to the Board to provide an administrative determination of appellant's request for reinstatement to be determined by the principles advanced herein.

ROBERTS, J., filed a concurring opinion in which LARSEN, J., joined.

O'BRIEN, C. J., filed a dissenting opinion.

*burgh*, 464 Pa. 607, 347 A.2d 707 (1975); *May Department Stores Co. v. Board of Property Assessment Appeals and Review of Allegheny County*, 441 Pa. 556, 272 A.2d 862 (1971). Here the parties expressly contemplated an attempt to seek relief under the Act. So, too, *res judicata*, or the "res judicata effect" appellees seeks to invoke, requires a degree of finality in the earlier proceeding, *Stevenson v. Silverman*, 417 Pa. 187, 208 A.2d 786 (1965); *Goldstein v. Abrams*, 379 Pa. 330, 108 A.2d 693 (1954), which was obviously not present here. The question of the applicability of the Act was deliberately left unanswered; the obligation to seek a resolution of that question was mandated.

12. This decision is concerned only with appellant's right to have a request for reinstatement considered on its merits and the standard to be used in such a judgment. Whether reinstatement is here appropriate must first be decided below upon remand.

ROBERTS, Justice, concurring.

I agree that this case should be remanded to the Workmen's Compensation Appeal Board for consideration of reinstatement of appellant's claim.

The three year statute of limitations acts as a presumptive bar to the filing of a claim beyond three years from the knowledge of injury, whether that claim is being filed for the first time or as reinstatement of a previously withdrawn claim. Nonetheless, circumstances have been recognized which will extend the right to file a claim petition. See *Helstrom v. Commonwealth, Workman's Compensation Appeal Board*, 43 Pa.Cmwlth. 113, 116, 401 A.2d 882, 884 (1979).

In the exceptional circumstances of this case, an evidentiary hearing on remand is essential to determine the reasons underlying appellant's withdrawal of his claim and whether reinstatement is appropriate.

LARSEN, J., joins in this concurring opinion.

O'BRIEN, Chief Justice dissenting.

I dissent from the majority's conclusion that appellant John Bigley is entitled to yet another hearing concerning the timeliness of a second claim petition filed four years after he sustained his injuries.

Contrary to the majority's position concerning the purpose of section 315 of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 602 [hereinafter "Act"], the limitation surely does exist, in part, to set in motion the process that will lead to an expeditious disposition of the claim. There are two limitation sections in the Act: the period for notice of injury, 77 P.S. § 631, and the period for claiming compensation, 77 P.S. § 602. If, as the majority claims, the prompt and efficient disposition of claims is not a purpose of the Act, there would be no underlying reason for the legislature to have included a time limitation for the assertion of a claim for benefits. Section 311 of the Act, 77 P.S. § 631, requiring notice of the injury to the employer within 120 days of the injury, would be

sufficient to put the employer on notice that he *may* have to investigate the facts surrounding an injury to an employee *in case* the employee makes a claim for benefits. This was the posture of the case when the initial claim petition was withdrawn. Although the employer had notice of the injury, the claim petition was withdrawn, indicating that no claim for benefits would be pursued. To require the employer to anticipate *ad infinitum* that a claim for Workmen's Compensation benefits might be forthcoming is an absurd and illogical burden that section 315 was designed to alleviate.[1]

A claim petition for Workmen's Compensation benefits also begins the concomitant procedures that disclose the facts necessary for a referee to determine if, in accordance with the Act, an injured employee is entitled to benefits. In the present case a determination was never rendered because the employer relied upon Mr. Bigley's position, as evidenced by the withdrawal of his claim petition, that he did not wish to pursue the claim.

The majority incorrectly states, "[appellee argues] that prior to the establishment of the underlying validity of the claim a withdrawal of the claim may not be reopened absent a showing that it was not voluntarily, knowingly or intelligently withdrawn." Majority Opinion at 1177. Appellee does *not* suggest that a claim petition may not be filed if there has been a previous petition filed and withdrawn prior to adjudication on the merits. Rather, employer argues, and rightly so, that such a petition may not be filed if the limitation period provided in § 315 of the Act has run[2],

1. The majority's decision today might be characterized as palatable because a relatively short period of time elapsed between the expiration of the period for claiming compensation and the filing of the second petition. However, the effect of the decision is to open Pandora's box, because an injured employee could attempt to refile two, five or even ten years later.

2. Although this writer discovered no cases factually identical to the present case, other states have dealt consistently with the effect of a withdrawn, timely-filed claim petition and a subsequent, untimely petition when there has been no adjudication on the merits. In *DeMars v. Robinson King Floors, Inc.*, 256 N.W.2d 501 (Minn.1977)

thereby extinguishing the right and the remedy. *Segal v. Segal*, 201 Pa.Super. 367, 191 A.2d 858 (1963); *Helstrom v. W.C.A.B.*, 43 Pa.Cmwlth. 113, 401 A.2d 882 (1979).

The majority has ignored the hearing held before Referee Floyd Warren on May 8, 1978, and the submission of briefs that followed. At the hearing counsel for Mr. Bigley stated,

the injured employee filed a claim petition for benefits and the employer denied liability. At a pre-trial conference before a compensation judge, an order of continuance was entered because the employee failed to file a substantiating medical report. Two and one-half years later the claimant's attorney withdrew the petition. A year later, new counsel for the employee petitioned to have the dismissed claim reinstated. The Minnesota Supreme Court, in affirming the denial of the petition stated,

"When an employee files a claim petition, the statute of limitations is tolled during its pendency since the commencement of an action arrests the running of the applicable statute of limitations. However, if a claim is dismissed without a determination on the merits, the result is the same as if it had never been filed and the statute of limitations had never been tolled." (Footnote omitted). Id. at 505.

In *Turner v. Keller Kitchen Cabinets, Southern, Inc.*, 247 So.2d 35 (Fla.1971), the Florida Supreme Court analyzed whether a letter from the claimant's wife constituted a claim where a prior claim had been filed and withdrawn by the claimant's attorney. The Court stated, "[s]ince the initial claim was withdrawn without adjudication on the merits, we find that it was subject to renewal by timely action." *Id.* at 38. (Emphasis Added).

*Gordy v. Callaway Mills Co.*, 111 Ga.App. 798, 143 S.E.2d 401 (1965) dealt with a widow's claim for compensation filed following her withdrawal of a prior claim. The Georgia Court of Appeals stated,

"The widow's claim . . . although filed within the one year limitation, was effectively invalidated by its voluntary withdrawal by the claimant. If a claim is withdrawn by the party filing it before a hearing is had, it is as though no claim had been filed, and the board would be without jurisdiction to entertain a second claim filed after the expiration of the statutory limitation . . ." *Id.* at 800, 143 S.E.2d at 402–403.

Finally, the New York Court of Appeals in *Joyce v. Eastman Kodak Co.*, 238 N.Y. 142, 144 N.E. 482 (1924) held that an employee who discontinued her compensation claim to pursue an action for damages against her employer was precluded from reinstating the claim by the statute of limitations of the Workmen's Compensation Law limiting the time for filing claims to one year from injury. Justice Cardozo, writing for a unanimous court stated, "[i]n vacating the order of withdrawal the board has attempted through the fiction of relation to make continuous in law what was discontinuous in fact." *Id.* at 145, 144 N.E. at 483.

"[W]e should dispose of this issue about the time limitations of the claim because it would not serve anyone worthwhile to get into a rather lengthy period of reading and preparation of the record on the technical issues, when there is a technical issue which could be an impediment."

Notes of Testimony of Hearing before Referee Warren, May 8, 1978 at 9. Additionally, while stating that Mr. Bigley would be available to testify along with about six other persons on the issue of whether appellant was in the course of employment when he was injured, counsel did not choose to present testimony at the hearing nor did he request to present testimony at some future date on the issue of the validity of the withdrawal of the initial claim petition and the untimely filing of the second petition. Notes of Testimony at 2, 9.

Counsel for appellant had every opportunity at the May 8, 1978, hearing to offer an explanation or assert an argument that might suggest an involuntary, unknowing or unintelligent withdrawal of the first claim petition or the existence of fraud or some excusable mistake.[3] Instead, appellant's counsel has argued only that the withdrawal of the claim was not a decision on the merits and it therefore could be reinstated, presumably at any time.[4] There were no requests or suggestions at the hearing, or at any level of appeal, that a hearing must be held to inquire into the facts surrounding the withdrawal of the initial petition, save the hypothesizing of the majority. The reason is, of course, that

3.    "A claim withdrawn after being timely filed must nevertheless be refiled within the required time or else be barred unless such withdrawal was caused by fraud or some excusable mistake. Where a claim filed in time is followed by a written request withdrawing the case, which request is accepted by the commission, a subsequent application for a hearing some time after the elapse of the statutory period, comes too late."
100 C.J.S. *Workmen's Compensation* § 468(6) 1958 (Footnotes omitted).

4.    "It is appellant's contention that § 315 is satisfied for all times if it is once satisfied..." Appellant's brief at 24.

the proceedings before Referee Warren on May 8, 1978, provided just this opportunity and there were no allegations made.

Appellant's first counsel appears to have ably represented Mr. Bigley. He filed a suit in trespass *and* filed a claim for Workmen's Compensation benefits, two exclusive remedies, apparently in an effort to obtain everything possible for his client.[5] He was obviously knowledgable about the Act and its limitation provisions, as evidenced by statements in the first-filed claim petition.[6] Since new counsel for Mr. Bigley had the opportunity to allege fraud or mistake at the hearing before the referee, if it indeed existed, and in the absence of any such allegation, this Court should affirm the referee's finding that the untimely claim petition of Mr. Bigley is barred by § 315 of the Act. Any other result completely ignores the purpose of the limitation and disregards this Court's explanation that:

"[T]he time limit in which claims might be filed was placed in the act not only to produce a uniform practice, but to enable employers to know the period of time they could be called upon to respond for just claims, so that they might not be constantly expecting stale claims of doubtful merit."

*Horn v. Lehigh Valley R.R. Co.*, 274 Pa. 42, 44, 117 A. 409, 410 (1922).

I would affirm the Order of the Commonwealth Court.

**5.** As the majority noted, Mr. Bigley and his employer entered into a settlement in the trespass action. "In the agreement, several hundred thousand dollars were paid directly to Mr. Bigley. In addition, he was paid an annual compensation on a monthly basis. I think it amounts to approximately eighteen thousand dollars per year for life." Notes of Testimony at 4.

**6.** Part 13 of the initial claim petition stated,
"A civil action was filed on my behalf alleging that I was not in the course of employment. This action is filed to protect my rights under the Workmen's Compensation Act within the statutory period allowed for filing claims."