IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allen Laster,                             :
                  Petitioner         :
                                 :
      v.                          :  No. 619 C.D. 2022
                                 :
Unemployment Compensation     :
Board of Review,                     :
                  Respondent        :  Submitted:  February 24, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge

OPINION BY JUDGE CEISLER             FILED:  May 3, 2023

Allen Laster (Claimant) petitions for review, *pro se*, of the May 4, 2022 Order of the Unemployment Compensation Board of Review (Board) denying Claimant's request to reinstate his appeal after an evidentiary hearing.  Because we conclude that the Board abused its discretion in denying Claimant's request, we reverse the Board's Order and remand this matter to the Board for the reinstatement of Claimant's appeal.

## Background

Claimant filed a claim for unemployment compensation (UC) benefits, effective July 5, 2020, following his separation from employment with Professional Transportation Inc. (Employer).  Bd's Finding of Fact (F.F.) No. 1; Record (R.) Item No. 2.  On March 29, 2021, the Department of Labor and Industry (Department) issued a Notice of Determination denying Claimant's claim for UC benefits under Section 402(b) of the Unemployment Compensation Law (Law),[1] finding that he

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).  Section 402(b) of the Law provides that an employee is ineligible for UC benefits for any
**(Footnote continued on next page…)**

voluntarily quit his employment without necessitous and compelling cause. Bd.'s F.F. No. 2; R. Item No. 5.

On April 10, 2021, Claimant filed an appeal from the Department's Notice of Determination. Bd.'s F.F. No. 3; R. Item No. 6. Thereafter, Claimant consulted with an attorney, who advised Claimant that he was unlikely to win his appeal and that if he did win and the decision was later reversed, Claimant would have to pay back the UC benefits awarded to him. Bd.'s F.F. No. 4.[2]

On May 12, 2021, Claimant filed a request with the Department to withdraw his appeal. *Id.* No. 5; R. Item No. 9.[3] Claimant made his withdrawal request knowingly and voluntarily. Bd.'s F.F. No. 6. On May 17, 2021, the Referee entered an Order granting Claimant's request to withdraw the appeal and terminating "all proceedings in connection therewith," stating that she had "reviewed the available records and f[ound] the request proper." *Id.* No. 7; R. Item No. 10.

---

week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

[2] The Referee initially scheduled a hearing on Claimant's appeal for May 25, 2021, *see* R. Item No. 8, but that hearing never took place because Claimant withdrew his appeal before that date.

[3] Claimant's email to the Department included the subject line "drop my appeal"; the body of the email contained only Claimant's name and appeal number, the name of the Referee, and the last four digits of Claimant's social security number. R. Item No. 9. Claimant sent his email to the Department at 6:47 p.m. on May 12, 2021. *Id.* The following day, the Department forwarded the email to the Referee, asking, "DO YOU ACCEPT THIS AS A WITHDRAWAL?" *Id.* Even though Claimant sent his email on **May 12, 2021**, both the Referee and the Board erroneously found that Claimant filed his withdrawal request on **May 14, 2021**.

Also on May 17, 2021, Claimant filed a request with the Department to reinstate his appeal. Bd.'s F.F. No. 8; R. Item No. 11.[4] On December 7, 2021, the Board remanded the matter to the Referee to receive testimony on the issues of why Claimant withdrew his appeal and why he subsequently wished to reinstate it. Bd.'s Order, 5/4/22, at 2; R. Item No. 14.[5]

The Referee conducted the remand hearing via telephone on January 21, 2022. Claimant, appearing *pro se*, testified that he withdrew his appeal based on the advice of an attorney. Claimant explained:

> I withdrew my [a]ppeal because the lawyer, which was a public defender lawyer, had misinformed me about a lot of stuff that I[] thought about after I left there. And it just wasn't right for me. But he was telling me that I was going to lose. And he had no interest in winning or pursuing my information. . . . [I]mmediately after I went, drove home, I got on the phone and called to . . . withdraw because . . . I thought about the conversation we had, not taking my side. [The attorney] wasn't – he seemed like he's for . . . Employer, not for me, an employee. He was defending [Employer]. Moreso, he was trying to get information from me to represent me. So that's [why] I thought after 30 minutes, . . . I should call and resubmit my [appeal].

---

[4] Claimant sent his email to the Department at 10:07 a.m. on May 17, 2021, the same day the Referee issued her Order approving the withdrawal and terminating the case. R. Item No. 11. Claimant's email included the subject line "please reopen my appeal"; the body of the email stated: "I have gotten bad advice from my lawyer. [P]lease allow me to represent myself or with another lawyer[.] [P]lease withdraw the cancellation of my appeal." *Id.* Three days later, on May 20, 2021, a Department employee, Barbara Forbes-Rouni, forwarded Claimant's email to the Board, stating, "This gentleman will most likely be appealing his withdrawal." *Id.* Again, even though Claimant sent the email asking to reopen his appeal on **May 17, 2021**, and the agency record indicates that the appeal was filed on **May 17, 2021**, the Board erroneously found that Claimant filed his request on **May 20, 2021**.

[5] The Board's remand Order stated in pertinent part: "The purpose of this hearing is to receive testimony on whether [C]laimant's appeal should be reinstated. The Board will also accept testimony on the merits. The Board may reach the merits of [C]laimant's appeal only if it vacates the withdrawal order." R. Item No. 14.

3

Notes of Testimony (N.T.), 1/21/22, at 13. Claimant could not recall the attorney's name but recalled that his office was "on Second Street." *Id.* at 13-14. Claimant further testified:

> [The attorney] said if I have to fight it, I have to pay it back if I lose. But if I don't fight it, then I don't have to pay it back. So that was the contributing statement that made me think about not going through with it, because that's what he had told me. I didn't have to pay it back if I didn't fight.

*Id.* at 14.

Claimant testified that shortly after his meeting with the attorney, he changed his mind. *Id.* Claimant testified that he called the Referee's office, and the person who answered the phone "told [him] what [he] had to do, that [he] had to fax her information saying that [he] want[ed] to reinstate [his a]ppeal." *Id.* at 15. When the Referee asked Claimant why he wished to reinstate his appeal, he replied:

> I think the [a]ppeal should be reinstated because I got bad information. I got information telling me I [would] have to repay [my UC benefits] if I [went] on with the [a]ppeal. If I didn't [win], I wouldn't have to pay it. So that was a big factor in . . . my decision to drop the [a]ppeal.

*Id.* at 16.[6]

Following the remand hearing, the Board issued findings of fact based on its review of the testimony and concluded as follows:

> During the hearing, [C]laimant testified that he wanted to reinstate his appeal because an attorney gave him bad advice. *However, the evidence shows that the withdrawal request was knowingly and voluntarily made. [C]laimant's frustration with one attorney with whom he consulted is not a sufficient reason to reinstate his appeal.*

---

[6] In compliance with the Board's remand Order, the Referee also received testimony on the merits of Claimant's underlying UC claim. *See* N.T., 1/21/22, at 16-28. However, because the Board did not reach the merits of Claimant's appeal, we need not address that additional testimony.

4

*Importantly, [C]laimant had the freedom to pick an attorney or non-legal advocate of his choice. Considering the testimony, the Board denies [C]laimant's request to reinstate his appeal.* The withdrawal order stands as final.

Bd.'s Order, 5/4/22, at 2 (emphasis added). Claimant now petitions this Court for review.

## Analysis

Claimant devotes the majority of his appellate brief to arguing the merits of his underlying, withdrawn appeal rather than to the only issue before this Court: whether the Board abused its discretion in denying Claimant's request to reinstate his appeal. Claimant's Statement of Questions Involved also fails to mention the Board's denial of his request to reinstate the appeal. We could quash Claimant's appeal on this basis. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). However, because Claimant includes the issue in the Summary of Argument and Argument sections of his brief, as well as in his *pro se* Petition for Review, we will address it.

A UC claimant who appeals from a Department determination has the right to voluntarily withdraw his or her appeal, with the Department's approval. Specifically, the Board's regulations provide: "A party who has filed an appeal *may withdraw and discontinue it with the approval of the tribunal before whom the appeal is pending*. Forms for withdrawal of appeal may be obtained from the office of the Board, a referee or a local employment office." 34 Pa. Code § 101.55 (emphasis added).

We have found only one decision of this Court involving a UC claimant's request to reinstate a voluntarily withdrawn appeal: *Theodore v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1977 C.D. 2016, filed July 31,

5

2017) (unreported). The *Theodore* Court outlined the proper standard for reviewing a Board's ruling on a reinstatement request as follows:

> *This Court reviews the denial of a request to reinstate an appeal for an abuse of discretion. See Neals v. City of Phila*[.], 325 A.2d 341, 343 (Pa. Cmwlth. 1974). To determine whether the Board abused its discretion, we look to whether the law is overridden or misapplied, or the decision "is the result of partiality, prejudice, bias, or ill will." *Henderson v. Unemployment Comp. Bd. of Rev*[.], 77 A.3d 699, 713 (Pa. Cmwlth. 2013). In so inquiring, we consider *the totality of the circumstances* surrounding the Board's decision. *Id.*

*Theodore*, slip op. at 3 (emphasis added).[7] This Court further explained:

> While Section 101.24 of the Board's regulation[s], 34 Pa. Code § 101.24, provides standards for reopening a hearing when a claimant fails to attend a scheduled hearing, *the Board's regulations are silent in the context of a [request to] reopen following voluntary withdrawal [of an appeal]. If this were a workers' compensation case, the law would require consideration of whether [the e]mployer would suffer undue prejudice as a result of reopening the appeal. See Powell v. Workmen's Comp. Appeal Bd.*, 443 A.2d 426, 427-28 (Pa. Cmwlth. 1982). With regard to withdrawals in administrative matters, the Supreme Court of Pennsylvania elaborated:

>> The power to adjust inequities prior to an administrative determination on the merits must necessarily be as broad as the powers that are available after such a determination. *The power to reinstate a gratuitous unilateral withdrawal should be liberally exercised absent a significant showing of prejudice by the other parties involved.*

> *Bigley v. Unity Auto Parts, Inc.*, 436 A.2d 1172, 1178 (Pa. 1981).

---

[7] Pursuant to our Court's Internal Operating Procedures, we may cite an unreported panel decision of this Court, issued after January 15, 2008, for its persuasive value. 210 Pa. Code § 69.414(a).

6

*Id.*, slip op. at 4-5 (footnote omitted; emphasis added).[8]

In this case, the record shows that Claimant sent an email to the Department asking to reinstate his appeal at 10:17 a.m. on Monday, May 17, 2021, *the same day* the Referee issued her Order approving the withdrawal and terminating the case. R. Item Nos. 10 and 11. Given the timing of Claimant's email, Claimant was presumably unaware of the Referee's ruling when he sent the email. Furthermore, three days later, a Department employee forwarded Claimant's email to the Board, notifying the Board that Claimant had "called [the Department on] Sunday[, May 16, 2021,] and left a message that he wished to rescind the [withdrawal] request." R. Item No. 11. This evidence, taken together, establishes that Claimant sought to rescind his withdrawal *prior to* the entry of the Referee's Order.

As *Theodore* instructs, the Board's "'power to reinstate a gratuitous unilateral withdrawal should be *liberally exercised absent a significant showing of prejudice by the other parties involved.*'" *Theodore*, slip op. at 5 (quoting *Bigley*, 436 A.2d at 1178) (emphasis added). The Supreme Court further explained:

> There is an implied authority at the administrative level to accept a unilateral request of withdrawal by the party presenting the claim prior to adjudication or agreement. *Concomitant with the implied authority*

---

[8] In *Theodore*, this Court was unable to determine whether the Board abused its discretion in denying the claimant's request to reinstate a withdrawn appeal because the Board "failed altogether to address whether [the c]laimant's appeal should be reopened, independent of the [r]eferee's decision to grant [the] withdrawal." *Theodore*, slip op. at 5. Therefore, we vacated the Board's order and remanded for the Board to consider whether the claimant's appeal should be reinstated and to explain the reasons for its decision. *Id.*, slip op. at 6. In so holding, we emphasized that the "[c]laimant *d[id] not argue error in the approval of his withdrawal, but s[ought] a discretionary reinstatement of his appeal* and a new hearing." *Id.*, slip op. at 5 n.6 (emphasis added). Like the claimant in *Theodore*, Claimant here also does not assert that the Referee erred in approving his withdrawal; rather, he seeks the discretionary reinstatement of his appeal.

7

*to permit a withdrawal prior to adjudication or agreement is also the power to reinstate that claim in appropriate circumstances.*

*Bigley*, 436 A.2d at 1177 (emphasis added). Here, the record contains no evidence demonstrating that Employer was prejudiced by Claimant's request to reinstate, particularly where Claimant sought to rescind his withdrawal only five days after requesting it and *before* the Referee approved it. Moreover, the Employer representative who testified at the remand hearing did not specifically contest reinstatement of the appeal, nor did he testify that Employer would be prejudiced by reinstatement.

This case is also distinguishable from those in which a claimant who was represented by counsel at all times in the proceedings before the agency made a tactical, informed decision to forgo his appeal rights. *See, e.g.*, *Neals*, 325 A.2d at 343 (affirming the denial of a request to reinstate an appeal, where the withdrawal was voluntary and knowing, the petitioner was not forced to withdraw, and "*at all times during the pendency of his case he was advised by counsel*") (emphasis added); *Andrews v. State Civ. Serv. Comm'n (Dep't of Transp.)* (Pa. Cmwlth., No. 513 C.D. 2007, filed Jan. 17, 2008), slip op. at 3-4 (affirming the denial of a request to reinstate an appeal where the petitioner knowingly and voluntarily withdrew her appeal and where she "*was represented by counsel at all times during the pendency of her case*") (emphasis added). Although Claimant testified that he consulted with an attorney after filing his appeal with the Referee, the record shows that Claimant was unrepresented by counsel throughout the proceedings before the Department. Claimant also testified that shortly after speaking with the attorney about his case, he realized he had received bad advice and immediately sought to rescind his withdrawal. N.T., 1/21/22, at 13-14. Under these circumstances, and applying the

analysis set forth in *Theodore*, which we find persuasive, we conclude that the Board abused its discretion in denying Claimant's request to reinstate his appeal.

## Conclusion

Accordingly, we reverse the Board's Order and remand this matter to the Board for the reinstatement of Claimant's appeal from the Department's March 29, 2021 decision.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allen Laster,                        :
               Petitioner        :
                               :
       v.                       :   No. 619 C.D. 2022
                               :
Unemployment Compensation    :
Board of Review,                :
               Respondent      :

# **O R D E R**

AND NOW, this 3rd day of May, 2023, the Order of the Unemployment Compensation Board of Review, dated May 4, 2022, is hereby REVERSED, and this matter is hereby REMANDED to the Board for the reinstatement of Allen Laster's appeal from the March 29, 2021 decision of the Department of Labor and Industry.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge